[L.A. No. 30141. In Bank. Jan. 14, 1974.]

FOODMAKER, INC., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent.

**COUNSEL**

Rubenstein & Hawkins and M. Armon Cooper for Petitioner.

Evelle J. Younger, Attorney General, and John E. Barsell, Jr., Deputy Attorney General, for Respondent.

**OPINION**

**McCOMB, J.**—Petitioner seeks review of a decision of the Alcoholic Beverage Control Appeals Board ("board"), which affirmed a decision of the Department of Alcoholic Beverage Control ("department") revoking liquor licenses which petitioner claimed the right to use and denying petitioner's applications for transfer of the licenses to it and for issuance to it of a license previously approved for issuance to one of petitioner's predecessor corporations on completion of certain premises. The action taken by the department and the board was contrary to the recommendation made by the hearing

officer, who had issued a proposed decision granting petitioner the relief it sought.

*Facts:* On October 1, 1970, petitioner became the successor by merger to Foodmaker Commissary, Inc. ("FCI"). Prior to that time, FCI was wholly owned by Foodmaker, Inc. ("FI"), a corporation which had the same name as petitioner now has. FI, in turn, was owned 99.96 percent by Ralston-Purina Company, which also owned 100 percent of the stock of Checkerboard Properties, Inc. ("CPI"). In the reorganization which took place on October 1, 1970, Ralston-Purina Company transferred all its shares in FI to CPI, which by that time had acquired the remaining 0.04 percent of the stock in FI; and FI merged into CPI, which thereupon changed its name to Foodmaker, Inc. FCI was then merged into the newly constituted Foodmaker, Inc. (petitioner herein).

At the time of the reorganization, which was effected to streamline the operations of Ralston-Purina Company and its subsidiaries, FCI was the owner of certain licenses issued by the department. On February 18, 1970, the department had issued to FCI, for premises located at 2040 Harbor Island Drive in San Diego, a Type 21 off-sale general license, a Type 47 on-sale general license for bona fide eating place, and a duplicate of the latter license. Said licenses were issued as priority licenses under sections 23800-23805, 23816, 23817, 23820, 23821, and 24070 of the Business and Professions Code.[1]

On January 7, 1970, FCI had applied by letter for a new priority on-sale general license for bona fide eating place for premises to be located at 5404 Balboa Avenue in San Diego; and it was notified by the department on February 26, 1970, that its application had been approved for issuance of the license upon completion of the premises.

On December 8, 1970, petitioner applied to the department for transfer to it of FCI's licenses covering the premises at 2040 Harbor Island Drive.[2]

---

[1] Unless otherwise indicated, all statutory references in this opinion are to the Business and Professions Code.

[2] The delay in making the application was apparently attributable to the fact that shortly before the merger an officer of one of petitioner's predecessor corporations had notified a representative of the department that a reorganization would be effected; that questions had been raised by the department with respect to the right of FCI to transfer the licenses, but that the reorganization had proceeded to such an extent that it was concluded it would have to be completed; and that after receiving assurances that the department would work with petitioner to alleviate the problems, petitioner was waiting for instructions on how it should proceed.

At the same time, the premises at 5404 Balboa Avenue having been completed, petitioner applied by letter to the department for issuance to it of the license which the department had agreed to issue to FCI for that location. On December 17, 1970, petitioner's application for issuance of the license for the premises at 5404 Balboa Avenue was denied. The applications for the transfer to petitioner of FCI's licenses for the premises at 2040 Harbor Island Drive were denied on February 25, 1971.

In the meantime, the department having indicated to petitioner that there was some question respecting the proposed transfers, petitioner had, in order to meet the scheduled opening of the restaurant at 5404 Balboa Avenue, applied on November 4, 1970, for a transfer of a nonpriority Type 47 license from premises at 2929 Shelter Island Drive in San Diego to 5404 Balboa Avenue. This application was granted, but the department required that petitioner withdraw its application for the transfer of the priority license approved for issuance to FCI for the premises at 5404 Balboa Avenue, and petitioner did so under protest. The department also required that petitioner accompany its application for the transfer of the license then being operated at 2929 Shelter Island Drive with a transfer fee of $1,250, which amount petitioner paid under protest.

On December 28, 1970, petitioner filed a petition for a hearing on the denial of its application for issuance of a Type 47 on-sale general license at 5404 Balboa Avenue. On January 18, 1971, the department filed an accusation against FCI with respect to the operation of the premises at 2040 Harbor Island Drive, seeking revocation of the licenses issued for said premises. On March 4, 1971, petitioner filed petitions for a hearing on the denial of its applications for transfer of the licenses operated at 2040 Harbor Island Drive. The matters were consolidated for hearing.

The licenses in question are concededly subject to subdivision (c) of section 24070, which provides that no such license "shall be transferable from the licensee to another person, or if the licensee is a corporation a controlling interest in the stock ownership of the licensee shall not be, directly or indirectly, sold, transferred, or hypothecated unless the licensee be a corporation the stock of which is listed on a stock exchange in this state or in the City of New York . . . for a period of two years from date of issuance of the license, *except as provided in Section 24071* and except when the department determines that the transfer is necessary to prevent undue hardship." (Italics added.)

That portion of section 24071 relating to transfers to or by corporations provides, in part: "[A] license may be transferred between corporations

whose outstanding shares of stock are owned by the same natural persons, or a licensee may transfer . . . any license to a corporation whose entire stock is owned by the licensee, or his spouse, or a license may be transferred from a corporation to a person who owns, or whose spouse owns, the entire stock of the corporation . . . ."

■ Question: *Does section 24070, subdivision (c), prohibit the transfer of FCI's priority licenses to petitioner?*

*No.* By the terms of section 24070, subdivision (c), no transfer of a priority license such as those here involved may be made from the licensee to another person for a period of two years after its issuance; and if the holder of one of the priority licenses is a corporation, a transfer of the controlling interest in the corporation is prohibited for a period of two years after issuance of the license unless the licensee is a corporation the stock of which is listed on a stock exchange in this state or in the City of New York. FCI's stock was not so listed. However, these prohibitions do not apply if one of the exceptions provided for in section 24071 exists.

In the present case, FCI was merged into a corporation which owned all its stock. As a result, the third clause of that part of section 24071 relating to transfers to or by corporations (that is, "a license may be transferred from a corporation to a person who owns, or whose spouse owns, the entire stock of the corporation") clearly applies if the word "person" therein includes a corporation. The board held that it did not.

Under sections 23002 and 23008, the word "person" includes a corporation "unless the context otherwise requires." The board adopted the view that the phrase "or whose spouse owns" can apply only to a natural person and that therefore "the context otherwise requires." That construction, however, is unrealistic. In the first clause of that part of section 24071 relating to transfers to or by corporations (that is, "a license may be transferred between corporations whose outstanding shares of stock are owned by the same natural persons"), the Legislature used the adjective "natural" to modify "person"; and if it had intended that "person" in the other two clauses likewise be restricted to natural persons, it would undoubtedly have stated such intention by referring to "natural persons."

It is true that the phrase "or whose spouse owns" can apply only to a natural person, but that is not inconsistent with a construction of "person" as including both natural and corporate entities. It would be as logical to say that by the phrase "or whose spouse owns" the Legislature intended to permit transfers only to (1) a corporation whose entire stock is owned by

a person who has a spouse and (2) the sole shareholder of a corporate licensee, provided such shareholder has a spouse. In any event, as pointed out above, the phrase "natural persons" is used in the first clause; and this is a clear indication that the unmodified noun "person" in the third clause is not necessarily confined to natural persons.

The board argues that to construe the third clause as allowing a transfer from a licensee which is a wholly owned subsidiary to its corporate parent makes meaningless the inclusion of the word "natural" in the first clause. The first clause, however, deals with a different situation, that is, a transfer between corporations having the same shareholders. A subsidiary corporation and its parent corporation do not have the same shareholders; the subsidiary's shareholder is the parent corporation, and the latter's shareholders are entities other than the parent.

It is contended that, in addition to showing that the transfers are permissible under one of the exceptions provided for in section 24071, petitioner must show that the department and the board improperly determined that the transfers were unnecessary to prevent undue hardship. Section 24070, subdivision (c), however, provides that the transfer of a priority license may not be made during a period of two years after its issuance "except as provided in Section 24071, *and except* when the department determines that the transfer is necessary to prevent undue hardship." (Italics added.) Thus, the Legislature has provided for two categories of exceptions; and if a licensee has brought itself within one of the exceptions, there is no need for showing that the other exception also applies.

The decision of the board is annulled, and the cause is remanded for proceedings consistent with the views expressed herein.

Wright, C. J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied February 13, 1974.